UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                          :
BARRY I. FREDERICKS,                      :
                                          :
            Plaintiff,                    :
                                          :          06 Civ. 966 (GEL)
    -against-                             :
                                          :          **OPINION AND ORDER**
CHEMIPAL, LTD.,                           :
                                          :
            Defendant.                    :
                                          :
-------------------------------------------------------------x
                                          :
CHEMIPAL, LTD.,                           :
                                          :
            Third-Party Plaintiff,        :
                                          :
    -against-                             :
                                          :
DERSHOWITZ, EIGER & ADELSON, P.C., and    :
NATHAN Z. DERSHOWITZ,                     :
                                          :
            Third-Party Defendants.       :
                                          :
-------------------------------------------------------------x

Barry I. Fredericks, Fort Lee, NJ, pro se, plaintiff.

Lawrence B. Goodman, New York, NY, and
Thomas A. Torto, Law Office of Thomas Torto,
New York, NY, for defendant and third-party
plaintiff.

Daniela Klare Elliott & Nathan Z. Dershowitz,
Dershowitz, Eiger & Adelson, P.C., New York, NY,
for third-party defendants.

1

GERARD E. LYNCH, <u>District Judge</u>:

In this three-party litigation, plaintiff trial attorney Barry I. Fredericks ("Fredericks") sues for non-payment of what he claims is a contingent fee owed to him by his former client, defendant Chemipal, Ltd. ("Chemipal"). Chemipal has in turn impled its appellate attorney, Nathan Z. Dershowitz ("Dershowitz"), and his firm, Dershowitz, Eiger, & Adelson, P.C. ("DEA" or the "Dershowitz firm"), charging them with malpractice and breach of contract. Plaintiff and defendant Chemipal cross-move for summary judgment on the non-payment claim. Third-party defendants Dershowitz and DEA move to dismiss the third-party claim, or in the alternative for summary judgment, and also seek sanctions against Chemipal pursuant to Rule 11 of the Federal Rules of Civil Procedure. Chemipal's motion for summary judgment on the non-payment claim will be granted and the impled third-party claims will correspondingly be dismissed. Third-party defendants' motion for sanctions will be denied.

## BACKGROUND

In April 2003, defendant Chemipal, an Israeli corporation, hired Fredericks to pursue an action against Slim-Fast Nutritional Foods International, Inc. in the United States District Court for the District of Delaware. The parties entered into a retainer agreement (Fredericks Aff. Ex. A), under which Chemipal agreed to pay a $40,000 "total suit fee," as well as a contingent fee of 35% "of the monies recovered from any source in connection with the . . . matter", which was to be paid

> whether the matter is settled after the commencement of legal
> proceedings, or whether the case goes to trial, whether or not appeals
> are required and without any regard to the amount of time, effort and
> expense which may be expended by us and without regard to whether
> the case or claim are concluded by direct settlement or otherwise.

(<u>Id</u>. at 2.) Under the heading "Post Trial Fees," the agreement goes on to note that "[t]his letter of

engagement relates to legal work on the trial level only and does not obligate this law office to undertake any appellate work." (Id. at 3.)  There is then a specific agreement with respect to what happens in the event of an appeal by the *defendant* in the underlying suit: while Fredericks is not required to undertake to defend the judgment, he may do so if he and Chemipal so agree, in which case he will be paid additional fees.  If either party elects for an attorney other than Fredericks to handle the appeal, Chemipal will bear the expense of hiring the new lawyer, which will not affect Fredericks's entitlement to 35% of whatever is ultimately recovered.  (Id. at 3.)

The agreement makes no specific provision for what happens if Chemipal *loses* in the trial court and recovers money after an appeal, and of course that is exactly what happened.  The District Court in Delaware granted summary judgment to Slim-Fast in the underlying suit.  Chemipal Ltd. v. Slim-Fast Nutritional Foods Int'l, Inc., 350 F. Supp. 2d 582 (D. Del. 2004).  Chemipal decided to appeal, and Fredericks filed a notice of appeal with the United States Court of Appeals for the Third Circuit.  (Compl. ¶ 14.)  Though Chemipal sought to retain Fredericks for the appellate proceedings, Fredericks opted not to take on that task.  Chemipal then hired DEA, and executed another retainer agreement.  (Benkel Aff., Ex. D; Chemipal Summ. J. Mem. 5).  According to Fredericks and Dershowitz, the three parties agreed that Fredericks would be available to consult on the appeal, and he did provide some services in this regard.[1]  (Fredericks Summ. J. Mem. 3; Dershowitz Aff. ¶¶ 4, 5, 7, 8).

---

[1] Chemipal says it never agreed with Fredericks that he should provide any appellate services.  But this is a question of fact.  Dershowitz's retainer, presumably agreed to by Chemipal, says he understands that Fredericks will be available for consultation.  (Benkel Aff. Ex. D.)  Reading the facts most favorably to Fredericks for purposes of Chemipal's motion, a jury could find that Chemipal agreed that Fredericks would remain associated with the case.

3

The appeal was never consummated.  At the prodding of the Third Circuit's dispute resolution staff, the underlying action was settled for $250,000.  Before signing off on the settlement, however, Chemipal asked Dershowitz to confirm with Fredericks that Fredericks was not owed any money from the settlement.  Chemipal would accept the settlement if it would actually net $250,000, but not if it would get $250,000 minus fees to Fredericks and/or Dershowitz. (Chemipal Summ. J. Mem. 6).  As to whether Fredericks had any claim on the settlement money, one of Dershowitz's associates talked to Fredericks, after which Dershowitz confirmed to Chemipal that Fredericks had said he was not owed any money.  (Chemipal Summ. J. Mem. 6-7; Fredericks Aff. Ex. K).  The parties agree that Dershowitz told Chemipal that Fredericks had "confirmed that he is not owed anything."  (Benkel Aff. Ex. E).  There is a factual dispute, though, about what Fredericks actually said or meant.

Fredericks says that he understood he was being asked if he was at that moment "owed" any money on outstanding expense reimbursements (which he was not), not whether he would disclaim any entitlement to his contingent fee (which he was not yet "owed" but which according to him would become due when the settlement went through).  Fredericks therefore claims that he never disavowed an interest in his contingent fee.  (Fredericks Summ. J. Mem. 10; Fredericks Aff Ex. K). Dershowitz and Chemipal, however, both took his statement to indicate he was not expecting any contingent fee payment.  (Fredericks Aff. Ex. J; Chemipal Summ. J. Mem. 7-8; Dershowitz Mot. to Dismiss Mem. 7).

Chemipal, believing it had covered its bases, signed the settlement.  After Slim-Fast wrote a check (which was deposited into DEA's escrow account), Fredericks advised Dershowitz that he had a lien on the proceeds for the amount of his contingent fee.  Dershowitz disbursed the

undisputed portion of the settlement proceeds to Chemipal, but retained the 35% claimed by Fredericks in escrow pending resolution of the dispute.  Fredericks then brought this action against Chemipal, contending that he is owed 35% of the Slim-Fast settlement under his original retainer agreement.

Chemipal has denied the allegations of the complaint, and asserted various affirmative defenses, including a claim that Fredericks is estopped by virtue of his alleged representation to Dershowitz that he would not seek additional fees from Chemipal.  Chemipal also impled Dershowitz, asserting in the alternative that if Fredericks did *not* provide the assurances alleged in their answer, then Dershowitz was guilty of malpractice for having ineptly questioned Fredericks or inaccurately reported his answers.

## DISCUSSION

### I.    The Primary Action for Recovery of Contingent Fees

#### A.    Summary Judgment Standards

Summary judgment must be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and an issue of fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party, and the Court must resolve all ambiguities and draw all reasonable inferences in its favor.  Id. at 255.

To defeat summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  "[C]onclusory allegations or unsubstantiated assertions" will not suffice.  <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998).  Rather, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e). <u>See</u> <u>Matsushita</u>, 475 U.S. at 587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (internal quotation marks omitted).

**B.     Choice of Law**

As an initial matter, Fredericks and Chemipal dispute whether New York or Delaware law controls in the primary action.  Chemipal's argument that New York law controls is more persuasive for a number of reasons, primarily because there are more than a sufficient number of New York contacts to meet the "grouping of contacts" set forth in <u>Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.</u>, 84 N.Y.2d 309, 317-19 (1994).[2]  Under this test, factors to consider include where the contract was signed; the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties.  <u>Id</u>. at 317.  Since the defendant signed the agreement here in New York, and portions of the agreement, including the one at issue here, were negotiated in New York, there are sufficient contacts to apply New York law.

_____

[2] A federal court sitting in diversity is to apply the choice of law rules of the forum state. <u>Globalnet Financial.com, Inc. v. Frank Crystal & Co.</u>, 449 F.3d 377, 382 (2d Cir. 2006).

Under the grouping of contacts test, Fredericks's case for Delaware law is weaker. He argues that Delaware law should control because the contract was to be performed (i.e., the litigation was to take place) in Delaware.  However, that is not entirely clear from the language of the retainer, which contemplates litigation in the  District Court for Delaware "or such other appropriate tribunal."  (Fredericks Aff. Ex. A at 1.)  In any case, Fredericks is neither admitted to the bar in Delaware nor has his office there; as a member of the New York, New Jersey, Colorado, and District of Columbia bars (per his retainer letterhead, see id.), he had to hire local Delaware counsel.  Neither party is domiciled in Delaware, and nothing leading up to the signing of the agreement took place there.

In any event, however, Fredericks does not argue that Delaware and New York law are any different on this issue, and concedes that the case comes out the same under both as there are no differences between them.  (Fredericks Mem. Oppo. Summ. J. 4.)  Since "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved," Globalnet Financial.com v. Frank Crystal & Co., Inc., 449 F.3d 377, 382 (2d Cir. 2006), quoting In re Allstate Ins. Co., 81 N.Y.2d 219, 223 (1993), there is no obstacle to applying New York law here.

### C.     The Dispute Between Fredericks and Chemipal Over the Meaning of the Contingent Fee Clause

Both Fredericks and Chemipal claim that the meaning of the retainer agreement is clear. While either of the interpretations advanced *could* be supported on the facts presented, New York law requires an interpretation in favor of the client in such situations, so summary judgment must be granted to Chemipal.

Chemipal contends that Fredericks's retainer ended upon entry of judgment, when he lost

the case in the district court.  It points out that the agreement dealt only with work at the trial level; the section dealing with "Post Trial Fees" provides that "[t]his letter of engagement relates to legal work on the trial level only and does not obligate this law office to undertake any appellate work." (Fredericks Aff. Ex. A at 2.)  According to Chemipal, the judgment ended Fredericks's relationship with Chemipal as a matter of law, without his being entitled to any compensation, because nothing was recovered; that another attorney thereupon took up the cudgels on Chemipal's behalf and won some money does not entitle Fredericks to anything.

Fredericks points out that his contract called for him to receive 35% "of the monies recovered from any source in connection with the above-entitled matter" (id.), language which is not on its face limited to fees recovered at the trial stage.  Though Fredericks's *obligations* under the retainer are limited to legal work on the trial level only, the parties could have contemplated at least some scenarios in which Fredericks would complete his trial level work, but Chemipal would not get any proceeds until after appellate proceedings, and Fredericks would still be entitled to a fee.  This is perfectly reasonable as a matter of logic: in such a scenario, Fredericks would have done work in the district court that laid the basis for the recovery, even if additional work would have to be done by another attorney to secure payment.  The fact that Fredericks's obligations are limited to a particular stage of litigation does not necessarily mean that Chemipal's obligations are limited in a parallel fashion.  The parties were perfectly free to arrange for Fredericks's entitlement under the agreement to come from a source other than trial recovery.  Thus, Fredericks argues, the fact that he was engaged only for trial work should not influence the interpretation of the contract terms concerning his fees.  Under Fredericks's interpretation, the contract unambiguously provides

that if he does all that is required at the trial level, he is entitled to a recovery of 35% of whatever Chemipal gets, wherever and whenever it gets it.

Although Fredericks's reading is plausible, other readings are equally plausible.  Fredericks is correct that the agreement entitles him to 35% "of the monies recovered from any source in connection with the above-entitled matter," but nothing in the agreement clarifies whether the phrase "above-entitled matter" refers to (1) all proceedings involving Chemipal and Slim-Fast or (2) the trial proceedings for which Fredericks agreed to serve as counsel.  It would be possible and reasonable to adopt the latter reading, in which case settlement fees recovered on appeal might not be recovered "in connection with" the relevant "matter."

The agreement is ambiguous as to how it applies to the situation that arose.  It expressly provides for what happens if Chemipal wins in the district court, and then has to retain another lawyer (or pay more money to Fredericks) to *defend* the victory on appeal.  But while the agreement is susceptible to the reading that Fredericks gives it — that he is not obligated to take an appeal of a loss, but he remains the attorney-in-waiting who will get a share of any eventual recovery — that reading is not compelled, since the parties said nothing at all about a loss in the district court followed by an appeal.  If the appeal was lost, and the judgment affirmed, of course Fredericks would get nothing.  If the appeal was won, the case would be returned to the district court for trial.[3] But what actually occurred is more unusual: the defendant in the underlying suit won on summary judgment, and when the plaintiff appealed, the judgment was neither affirmed nor reversed and

---

[3] It is not clear whether Fredericks would still be required to try the case, or what would happen if Chemipal selected a new lawyer who then won a judgment — possibly Fredericks would be entitled to some quantum meruit recovery, but it is hardly clear that he would be entitled to 35% of the judgment won by the appellate lawyer and the second trial attorney.

remanded for trial on the merits, but settled with a recovery by the plaintiff. Chemipal's argument that this was an unforeseen contingency, and that the agreement should be read as ending when the case was (temporarily) "lost," is also not an impossible reading of the parties' intentions.[4]

Under New York caselaw, when a retainer agreement is ambiguous, there is a rebuttable presumption against the attorney and for the client's reading of the agreement. This presumption derives from the principles set forth in Shaw v. Manufacturers Hanover Trust Co., 68 N.Y.2d 172 (1986), in which the New York Court of Appeals considered a retainer agreement that provided for a recovery of one-third "of any monies that may come into your hand by reason of the above claim." Id. at 174. The underlying trial had ended in an adverse verdict, but the case settled after a successful appeal by another counsel, and the initial firm sought to recover contingency fees. The parties' dispute thus focused on when the agreement terminated. The court noted that "[t]he importance of an attorney's clear agreement with a client as to the essential terms of representation cannot be overstated," and that New York law therefore places "the burden on attorneys who have drafted the retainer agreements to show that the contracts are fair, reasonable, and fully known and

---

[4] Chemipal is wrong to argue that reading the agreement as Fredericks would have it read is unconscionable or a violation of public policy. (Chemipal Summ. J. Mem. 21-23.) That Chemipal would wind up with not much money after paying both Fredericks and Dershowitz would be not unreasonable as a matter of law. First, the retainer agreement contemplated that possibility — there was always a chance that Chemipal would win a small recovery, and then have to pay an appellate lawyer in addition to paying Fredericks his contingent fee, and that is expressly provided for. Second, there is nothing in the record from which it can be ascertained whether Chemipal was entitled to recover *anything*: the only court to opine on the matter said Chemipal should get *nothing*, and the matter was then settled. It is perfectly consistent with the record to find that Chemipal was never entitled to anything more than they got out of the lawsuit. Finally, there is nothing necessarily odd about finding Fredericks entitled to a fee for a case that, on the surface, he "lost" and Dershowitz then "won." Presumably, it was the work that Fredericks did in discovery and motion practice that formed the basis for the appellate argument that convinced the underlying defendant to settle the suit, particularly given that the case was settled before Dershowitz ever filed a brief.

understood by their clients." Id. at 176.  In the agreement at issue in Shaw, as in the agreement

here, "no mention [was] made of appeals." Id. at 177.  Where the agreement is silent, and where

both parties' interpretations are reasonable, "the law requires that an agreement between client and

attorney be construed most favorably for the client." Id.[5]  Thus, the client's interpretation of the

agreement prevailed. Id.

      In Shaw, the firm seeking payment explicitly disclaimed any issues of fact that bore on the

meaning of the retainer. Shaw, 68 N.Y.2d at 177.  Where there is "conflicting extrinsic evidence

with respect to the intent of the parties," though, despite the presumption against attorneys'

interpretations, summary judgment is inappropriate. Wolfgang v. Hampton Hill Villas Condo. Bd.

of Mgrs, 816 N.Y.S.2d 785, 786  (N.Y. App. Div., 4th Dep't 2006); see Ruthman, Mercadante &

Hadjis, P.C. v. Nardiello, 688 N.Y.S.2d 823, 826 (N.Y. App. Div., 3d Dep't 1999).

      In this case, however, neither of the parties contend that there is any extrinsic evidence that

might affect how the agreement should be interpreted.  The parties agree that there were no

discussions between them as to whether Chemipal would have to pay Fredericks part of a recovery

achieved by a new attorney.  (See Chemipal 56.1 Stmt. ¶ 9;  Fredericks Response to Chemipal's

------

[5] The court went on to suggest that the client's litigation position would determine the interpretation of the agreement:

> Had the client maintained that the retainer agreement required respondent's representation through conclusion of the matter (as was true in the cases relied on by respondent), that would have been the mandated interpretation.  But where, as here, the client has asserted that the contract terminated upon entry of an adverse judgment we hold that the agreement must be construed so to provide.

68 N.Y.2d at 177.

56.1 Stmt. ¶ 9.)  Fredericks asserts that "there is nothing to suggest that the Retainer Agreement is not a totally integrated document."  (Fredericks Mem. 9.)  Indeed, neither party has offered any evidence that they ever contemplated the possibility of recovery by settlement after an adverse result at trial.  "[A]n attorney who has drafted a retainer agreement ordinarily has the burden of showing that the contract was fair, reasonable, and fully known and understood by the client."  Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 67 (2d Cir. 2000).  Fredericks has offered no evidence that would give rise to a genuine issue of material fact as to whether Chemipal understood that Fredericks was entitled to money recovered by another attorney after an unsuccessful appeal.  Accordingly, the contract must be construed in favor of the client, and summary judgment will be granted for Chemipal as to the meaning of the retainer agreement.[6]

> **D.    Fredericks's Quantum Meruit Claim**

Fredericks argues that even if he is entitled to no recovery pursuant to the retainer agreement, he can recover in quantum meruit for the reasonable value of services recovered.  (Fredericks Mem. Oppo. to D. Mot. for Summ. J. 8-9.)  Ordinarily, recovery in quantum meruit is allowed where there is no valid and enforceable contract governing a "particular subject matter."  Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 N.Y.2d 382, 388 (N.Y. 1987).

Under New York law, a quantum meruit claim is only available when the matter at issue is not covered by an otherwise enforceable contract.  Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., 448 F.3d 573, 586-87 (2d Cir. 2006).  If the contingent fee arrangement is

---

[6] Because the retainer agreement must be read in Chemipal's favor as not entitling Fredericks to any recovery, there is no need to address Chemipal's arguments that Fredericks is estopped from claiming any of the settlement recovery by virtue of his alleged representation to DEA in October 2005 that he was "not owed any money."  (Chemipal Mem. Oppo. Summ. J. 24.)

found to have specifically covered the situation at hand, either by entitling or not entitling

Fredericks to a contingent fee, a quantum meruit claim cannot survive.  See Goldman v. Metro. Life

Ins. Co., 5 N.Y.3d 561, 587 (N.Y. 2005).  Although the parties disagree as to whether the retainer

agreement entitled Fredericks to any recovery for his services at the trial level, it is undisputed that

the retainer agreement governed whatever recovery he received at that stage.  As discussed above,

the retainer agreement must be read to deny Fredericks any contingent fee recovery for work

performed at the trial level.  Accordingly, the "particular subject matter," Clark-Fitzpatrick, 70

N.Y.2d at 388, of Fredericks's entitlement to recovery for his services at the trial level is covered by

a valid contract, and no quantum meruit recovery for those services may be had.

    This leaves open a question, however, as to whether Fredericks could be entitled to a

quantum meruit recovery for the services he claims to have performed in connection with the

appeal.  There is a factual dispute between the parties as to whether and to what extent Fredericks

acted as a consultant to Chemipal's appellate counsel.  (Fredericks 56.1 Stmt. ¶ 18; Chemipal 56.1

Stmt. ¶ 18.)  This apparent factual dispute, however, arises only from the parties' filings relating to

the current motion; Fredericks's complaint makes only a claim for breach of contract and never

mentions quantum meruit.  (Fredericks Aff. Ex. B.)  Thus, Fredericks "in effect is apparently

attempting to add a claim never addressed, or even hinted at, in the complaint.  Such a step is

inappropriate at the summary judgment stage, after the close of discovery, without the Court's

leave, and in a brief in opposition to a dispositive motion."  Caribbean Wholesales & Service Corp.

v. U.S. JVC, 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997).  Fredericks makes clear in his motion

papers that he is not currently bringing a quantum meruit claim, but only that he may bring one "[i]f

the need arises."  (Fredericks. Mem. Opp. Summ. J. 9.)  "To the extent that [Fredericks] contends

that any such claim can be asserted by amending the complaint, [he] may seek leave to do so by the filing of an appropriate motion." Caribbean Wholesales, 963 F. Supp. at 1359.  Unless and until such a motion is made, however, there is no need to adjudicate a claim never raised.

## II.   Chemipal's Malpractice and Breach of Contract Claims Against Dershowitz and DEA

Dershowitz and DEA move to dismiss Chemipal's malpractice complaint against it on the grounds that it fails to state a claim.  Given that Chemipal's motion for summary judgment must be granted, however, the third-party malpractice claims are dismissed as moot.  Both causes of action in the third-party complaint are explicitly conditioned on Fredericks's recovery of damages against Chemipal, seeking damages only "in the event and to the extent that Fredericks recovers judgment . . . against Chemipal." (Chemipal Third-Party Compl. ¶¶ 35, 37, 40).  Accordingly, the relief sought . . . is no longer needed," Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983), and the claims must be dismissed as moot.  See St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 694 n.2 (2d Cir. 1989).

## III.   Dershowitz and DEA's Motion for Sanctions Against Chemipal

Dershowitz and DEA bring a motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.  DEA's motion for sanctions is premised on the argument that there is "no legal and factual basis for the third-party claim" and that the complaint is "meritless."  (Dershowitz Mot. for Sanctions  ¶¶ 3, 8).  Therefore, the underlying merits of Chemipal's claims, despite their dismissal, must be examined.

"Rule 11 sanctions for advancing a frivolous legal argument are only warranted where 'under an objective standard of reasonableness, it is clear . . . there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'" McNeil-PPC, Inc. v.

Perrigo Co., 443 F. Supp. 2d 492, 513 (S.D.N.Y. 2006), citing Morley v. Ciba-Geigy Corp., 66 F.3d 21, 25 (2d Cir. 1995).  This clearly is not the case here.

Dershowitz contends that Chemipal's complaint does not state a claim for malpractice on which relief can be granted, and that its complaint by its own terms demonstrates that Chemipal's claims are frivolous.  Dershowitz argues that the claims against him are meritless because he was not tasked to negotiate a settlement or release with Fredericks, and therefore did nothing wrong: DEA was retained to prosecute an appeal as against Slim-Fast, which it did, and negotiated a settlement, which the client duly accepted.  Indeed, it is not alleged in the complaint that Dershowitz was privy to the terms of the retainer agreement between Chemipal and Fredericks, nor that Chemipal asked Dershowitz for advice about whether Fredericks would have any claim to any portion of the settlement under that agreement, nor that Chemipal asked Dershowitz to negotiate a resolution of any such claim by Fredericks.

The Chemipal complaint against Dershowitz and DEA is based on the allegation that Dershowitz "failed to thoroughly inquire and properly confirm" that Fredericks claimed no portion of the post-trial recovery.  (Chemipal Third-Party Compl. ¶ 34.)  According to Dershowitz, however, Chemipal has conceded that Fredericks in fact told Dershowitz that he was not owed anything.  If true, that would mean that Dershowitz was not guilty of negligence, because the asserted negligence was the failure to make sure that Fredericks made no claim.  Thus, Dershowitz argues, the complaint itself demonstrates that Chemipal's claims have no chance of success.

Dershowitz's argument for sanctions hinges on the supposed factual concession by Chemipal that Dershowitz accurately relayed Fredericks's position to Chemipal.  It is true that Chemipal asserts that to be its "position" in this litigation, both in the answer to Fredericks's

15

complaint (Chemipal Ans. ¶ 37) and in Chemipal's third-party complaint (Chemipal Third-Party
Compl. ¶ 32.).   What Fredericks told DEA, however, is not a fact that can be within Chemipal's
own knowledge.   All that Chemipal knows first-hand is that Dershowitz and Fredericks dispute
what was actually said between them.   Chemipal may subjectively *believe* Dershowitz's version of
its communication with Fredericks; it may prefer to believe that version, which would simplify its
litigation position.   It cannot, however, *know* what actually occurred, nor can it be sure what a fact-
finder at trial would conclude.   Thus, the putative factual concession can be no more than a
litigation "position," as Chemipal identifies it.

   Nor does the complaint unambiguously allege as fact that Dershowitz accurately relayed
Fredericks's position, whatever "position" Chemipal adopts in this litigation.   What the complaint
actually alleges in the factual portion of the complaint, in fact, is quite otherwise, and is inconsistent
with the "position" announced in paragraph 32.   Chemipal alleges, "[u]pon information and belief,"
that Dershowitz "did *not* confirm with Fredericks whether he would be owed any additional fees if
Chemipal accepted [the settlement offer], as was requested by Chemipal's Israeli attorneys."
(Chemipal Third-Party Compl. ¶ 25; emphasis added).   Thus, the complaint alleges that Dershowitz
did *not* do, or at least did not do competently, what its client asked.   If that is what happened — and
for determining whether the complaint was frivolous, the Court must assume the facts alleged are
true — then the malpractice claim is far from unreasonable.   It is well established that an attorney
has an obligation to provide the client with all information material to the client's decision to pursue
or fail to pursue a given action.   Spector v. Mermelstein, 361 F. Supp. 30, 39-40 (S.D.N.Y. 1972),
rev'd in part on other grounds, 485 F.2d 474 (2d Cir. 1973).   Accordingly, "[n]egligent or willful
withholding of information material to the client's decision to pursue a course of action is a breach

of the duty of due care." Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 397 (S.D.N.Y. 2000). See also Polin v. Wisehart & Koch, No. 00 Civ. 9624,  2004 WL 1944721, at *16 (S.D.N.Y. Sept. 2, 2004) (denying summary judgment for defendant law firm on legal malpractice claim where attorney's negligence may have influenced plaintiff's decision to pursue suit).  Thus, it cannot be said that Chemipal's complaint had "no chance of success."  McNeil-PPC, 443 F. Supp. 2d at 513.

It is true that Chemipal's complaint contains allegations that are at least in tension, if not flatly inconsistent, about what occurred between Dershowitz and Fredericks.  In paragraph 25, Chemipal alleges upon information and belief that Dershowitz failed to confirm with Fredericks that he would not seek additional fees.  In paragraph 32, Chemipal states its "position" that Fredericks did in fact tell Dershowitz he would not.  This inconsistency may suggest poor drafting, but it is not necessarily a sign of bad faith.

The complaint's allegations can be reconciled on the hypothesis that Chemipal intends to plead in the alternative, as it is expressly permitted to do by Rule 8(e) of the Federal Rules of Civil Procedure.  Its primary position, as advanced in its answer and alluded to in paragraph 32, is that Fredericks committed not to seek additional payments, and therefore is estopped from relying on the retainer agreement to seek any portion of the settlement.  If that turns out to be incorrect, however, and Fredericks made no such representation to Dershowitz, then the Dershowitz firm (which advised Chemipal that Fredericks had done so) failed in its obligation to accurately report Fredericks's position, and is liable to Chemipal in malpractice for its dereliction, as alleged in paragraph 25.  Paragraph 34 of the complaint supports the view that Chemipal is pleading in the alternative, asserting that Dershowitz breached its duty "*[i]f* it is determined that Fredericks did not in fact inform [Dershowitz] that Chemipal would not owe him any additional fees if Chemipal

17

accepted [the settlement offer]." (emphasis added). Chemipal's briefing on this motion confirms that this is indeed the intended meaning of its complaint.

As should go without saying, the Court can make and does make no findings either about what occurred, or about whether any of Chemipal's arguments would have prevailed had it claims not become moot. But it cannot be said that "there [was] no chance of success and no reasonable argument" in bringing the claims. McNeil-PPC, Inc., 443 F. Supp. 2d at 513. As such, Dershowitz's motion for Rule 11 sanctions is denied.

<h2 style="text-align:center">CONCLUSION</h2>

For the foregoing reasons, defendant's motion for summary judgment (Doc. #53) will be granted, and plaintiff's motion for summary judgment (Doc. # 39) denied. Third-party defendants' motion for dismissal (Doc. # 22) is denied as moot, and third-party defendant's motion for sanctions (Doc. # 28) is denied.

SO ORDERED.

Dated: New York, New York
       May 3, 2007

GERARD E. LYNCH
United States District Judge

18